1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

## Oct 14, 2025

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

MATTHEW H.,[1]

             Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

             Defendant.

No.   1:25-cv-3056-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Matthew H. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. In response, the Commissioner argues that the ALJ's denial of benefits is supported by substantial evidence. As is explained below, remand for further proceedings is necessary because the ALJ erred by not fully

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

evaluating the impact of Plaintiff's fatigue, other symptoms, and medication side-effects relating to his congestive heart failure and chronic kidney disease.

## I.    Background

On October 11, 2021, Plaintiff applied for benefits under Title 16.[2] After the agency denied benefits, Plaintiff requested a hearing before an ALJ.[3] ALJ Cecilia LaCara held a telephone hearing in November 2023, during which Plaintiff appeared without representation.[4] Both Plaintiff and a vocational expert testified.

Plaintiff testified that he is unable to work due to chronic kidney disease (stage 4) and systolic heart failure.[5] He stated that he had been taking medications for two years for his conditions, with minor adjustments, and that the medications cause tiredness, dizziness, and

_____

[2] AR 157–67.

[3] AR 89–100.

[4] AR 47–69.

[5] AR 54.

the need to go the bathroom often—about every 30 minutes.[6] He said he experiences lack of feeling in his fingers and toes, nausea, stomach cramps, fatigue, coldness, and pain in his back and kidneys.[7] He stated he is unable to ride in a vehicle for long periods of time and that, although he has a driver's license, he does not drive because of his dizziness.[8] He testified that he lives with his mother, who typically does all of the chores, including taking care of the dog and cat, and who drives him around, unless he uses the bus.[9] He said he sometimes does dishes and picks up but mostly he spends the day in bed.[10] He testified that Tylenol does not adequately address his pain, especially during

---

[6] AR 55–57, 67.

[7] AR 55–56.

[8] AR 58.

[9] AR 58, 62.

[10] AR 59.

the night when he gets body pain, joint pain, and restlessness.[11]

Plaintiff stated that he last used drugs and alcohol two years prior.[12]

In his function reports, Plaintiff stated that his restlessness, pain in his back, medications, and using the restroom every hour affects his sleep.[13] He noted that he has issues lifting, standing, walking, stair climbing, completing tasks, and concentrating, and that his family drives him everywhere due to his fatigue and nausea.[14] He wrote that he could walk for 10 minutes before needing to stop and rest.[15]

After the hearing, the ALJ issued a decision denying benefits.[16] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the

---

[11] AR 62.

[12] AR 60–61.

[13] AR 217, 245.

[14] AR 221, 248.

[15] AR 221, 250.

[16] AR 28–46. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

record."[17] The ALJ considered the lay statement from Plaintiff's mother.[18] As to the medical opinions, the ALJ found:

- The findings of state agency medical consultants Lewis Cylus, MD, and Ian Cowan, MD, moderately persuasive.

- The findings of state agency mental consultant, Pamela Kraft, PhD, generally persuasive.

- The opinion of psychological consultative examiner, Kathryn Johnson, PhD, moderately persuasive.[19]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since October 11, 2021, the application date.

---

[17] AR 37. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should replace the phrase "not entirely consistent" with "inconsistent." 53 F. 4th 489, 499, n.2 (9th Cir. 2022).

[18] AR 40, 225–32.

[19] AR 39–40.

- Step two: Plaintiff had the following medically determinable severe impairments: chronic kidney disease, congestive heart failure, personality disorder, depression, and anxiety.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except:

  [Plaintiff] can stand, and/or walk for up to 4 hours and sit for up to 6 hours in an 8-hour workday with customary breaks. He is capable of occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds. He can perform simple, routine tasks and have superficial interaction with coworkers.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as storage rental clerk, office helper, and outside deliverer.[20]

---

[20] AR 31–42.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[21]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[22] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

---

[21] AR 6–11. ECF No. 1.

[22] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error— one that "is inconsequential to the ultimate nondisability determination").

support a conclusion."[23] The court looks to the entire record to determine if substantial evidence supports the ALJ's findings.[24]

### III.   Analysis

Plaintiff argues the ALJ's findings as to the medical opinions and Plaintiff's symptom reports are not supported by substantial evidence and that the RFC failed to include each of the opined limitations and reported symptoms. In response, the Commissioner argues that the ALJ's findings are supported by substantial evidence, particularly because Plaintiff's conditions improved when he stopped abusing substances and when he complied with medical treatment. As is

---

[23] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[24] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring the court to consider the entire record, not simply the evidence cited by the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

explained below, the ALJ's errors when evaluating the medical opinions impacted the no-disability finding.

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ failed to fully incorporate Dr. Kraft's and Dr. Johnson's opinions into the RFC. In response, the Commissioner highlights that neither of these providers offered an opinion that supports a finding of disability. Contrary to the Commissioner's position, Dr. Kraft opined a social-interaction limitation that was not fully adopted by the ALJ—and the ALJ failed to explain why such was not part of the RFC. Moreover, the ALJ's analysis fails to meaningfully evaluate the concern expressed by both Dr. Kraft and Dr. Johnson that Plaintiff's ability to maintain adequate pace or persist on tasks may be limited due to his heart and kidney conditions.

### 1.    Standard

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with

and supported by the record.[25] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[26] Supportability and consistency are the most important factors.[27] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[28]

### 2. Dr. Johnson

On November 23, 2022, Dr. Johnson conducted a video psychological diagnostic interview, which included reviewing medical records from October 5, 2021 and May 25, 2022, interviewing Plaintiff, and conducting a mental status examination.[29] The October 2021

---

[25] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[26] 20 C.F.R. § 416.920c(c)(1)–(5).

[27] *Id.* § 416.920c(b)(2).

[28] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[29] AR 1548–52.

record was a discharge summary from Evergreen Health, identifying that Plaintiff had edema in his lower extremities, was conversant and interactive on one occasion but also had poor concentration or fell asleep during another interaction, and had a systemic murmur, and recommended that Plaintiff follow-up with primary care, nephrology, cardiology, and the methadone clinic, and should only engage in gentle activity as tolerated.[30] The May 2022 Tri-Cities Treatment Center record was an admission report from the methadone treatment.[31]

During the interview with Dr. Johnson, Plaintiff stated that he perceived his kidney and heart diseases were his primary barriers to work, although he also felt anxious, restless, and depressed due to his physical health conditions.[32] Plaintiff was cooperative, was distant as the examination began but warmed up a bit during the hour-long interview, and had adequate eye contact and responses to questions,

---

[30] AR 1148–58.

[31] AR 1535–38.

[32] AR 1548.

although his responses were quite brief.[33] He had a bland affect with generally euthymic mood, fluent speech, linear and goal-directed thoughts, good insight as to his condition, and full orientation.[34] He recalled 2 of 3 objects after 5 minutes, and his ability to concentrate was adequate for the evaluation although he reported longstanding difficulty with attention and concentration.[35] He shared that his typical day involved mostly resting, including watching television or being on his phone, as he is always tired and takes a lot of medications.[36] He reported that his mother drives him to the methadone clinic three times per week.[37] He stated that he does not stay in contact with anyone except his family.[38]

_____

[33] AR 1550.

[34] *Id.*

[35] *Id.*

[36] AR 1551.

[37] *Id.*

[38] *Id.*

Dr. Johnson diagnosed Plaintiff with opioid use disorder and alcohol use disorder in sustained remission, unspecified anxiety disorder, and general personality disorder.[39] She wrote:

> The claimant's physical health conditions appear to pose the primary barrier to work, though psychological and personality factors are certainly problematic as well. He has a history of academic problems, lack of any meaningful work history, and an extensive history of drug addiction and homelessness. It is unclear to what degree his drug use impacted mood over the years. The claimant's ability to function is severely limited, and he has no reasonable means of caring for his basic needs.
>
> The claimant should be able to understand and follow basic instructions, though he would be unable to manage more complex tasks. Given his extremely low energy level, it is unlikely that he would be able to maintain an adequate pace or persist on tasks over time. His ability to interact with others would be impacted by his anxiety and mood symptoms. He is unable to tolerate the stressors inherent in most workplace settings.[40]

Dr. Johnson recommended that a payee be appointed to help Plaintiff manage his funds given his extensive substance abuse history.[41]

---

[39] AR 1551.

[40] AR 1551.

[41] AR 1551.

1    The ALJ found Dr. Johnson's opinion moderately persuasive

2  because "[i]t is supported by her consultative examination, but not fully

3  consistent with the claimant's other medical evidence, including lack of

4  treatment and generally benign presentation to treating providers."[42]

5    The ALJ's analysis, which focuses on Plaintiff's lack of treatment

6  for anxiety and depression and Plaintiff's generally benign mental-

7  health presentation to treating providers during the relevant period,

8  fails to consider that Dr. Johnson's opined limitations were based in

9  large measure on Plaintiff's fatigue and low energy level related to his

10  physical conditions. For instance, Plaintiff's extremely low energy level

11  was the basis for Dr. Johnson's opinion that Plaintiff was unlikely to

12  maintain adequate pace or persistence, whereas his anxiety and

13  depression symptoms were the basis for Dr. Johnson's opinion that

14  Plaintiff's ability to interact with others was impacted. The ALJ's

15  failure to fairly consider that Dr. Johnson found Plaintiff's low energy

16  resulted from his physical conditions consequentially impacted the

17  ALJ's evaluation of Dr. Johnson's opinion. This error's impact is

18

19  [42] AR 40.

highlighted by the fact that Dr. Kraft also recognized the need to consider how Plaintiff's physical-health conditions impacted his ability to sustain work and thus deferred to the physical RFC to determine Plaintiff's work limitations, as is discussed more below.[43]

### 3. Dr. Kraft

On December 9, 2022, Dr. Kraft reviewed the medical evidence of record.[44] Dr. Kraft categorized the severe medically determinable mental-health impairments as personality disorder; depressive, bipolar, and related disorders; and anxiety and obsessive-compulsive disorders. She found that Plaintiff had moderate limitations in each of the Category B Criteria of the Listings and found Plaintiff's abilities to:

- understand and remember detailed instructions to be markedly limited.

- carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from

---

[43] AR 86.

[44] AR 79–88.

psychologically based symptoms and to perform at a consistent

pace without an unreasonable number and length of rest

periods; interact appropriately with the general public; and set

realistic goals or make plans independently of others to be

moderately limited.[45]

In support of these limitations, Dr. Kraft wrote:

- "Recent exams reflect claimant's statement he is feeling very well, he has EF 46%, and fairly stable chronic kidney disease that's better than listing. Claimant does have a lowered stress tolerance, but is able to attend consultative examinations and other exams, relay his medical symptoms and understand and retain medical advice."[46]

- "Capable of [simple, routine tasks] but would have difficulty understanding and retaining information pertaining to [complex, detailed tasks] due to mood."[47]

- "Able to perform simple tasks with his physical limits with intermittent disruption of [concentration, persistence, and place] due to anxiety and depression. Ability to sustain deferred to physical RFC as [claimant] has not been diagnosed with depression, personality disorder does not

---

[45] AR 86–87.

[46] AR 84 (cleaned up).

[47] AR 86.

DISPOSITIVE ORDER - 16

meet listing level severity and anxiety only periodically interferes with function."[48]

- "Capable of superficial social interactions with others in the workplace."[49]

- "Will need assistance with work related goals."[50]

The ALJ found Dr. Kraft's opinion:

> generally persuasive, but the need for assistance with goals is not indicated given the claimant's independent handling of his care and apparent reliance on his mother seemingly not entirely based on need (he can navigate public transportation, attend appointments, play video games, etc. without assistance). Otherwise, this opinion is supported by review of the record and consistent with the consultative mental exam and no mental health treatment.[51]

First, the ALJ fails to meaningfully explain why Dr. Kraft's opinion "is supported by review of the record."[52] The supportability factor looks to what "relevant . . .objective medical evidence and

---

[48] AR 86.

[49] AR 87.

[50] AR 87.

[51] AR 39.

[52] AR 39.

supporting explanations presented by a medical source" support her

opinion."[53] The ALJ's boilerplate finding is insufficient to afford

meaningful review as to the supportability factor.[54]

Second, although the ALJ finds that Dr. Kraft's and

Dr. Johnson's opinions are consistent with each other and therefore

---

[53] 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical

evidence and supporting explanations presented by a medical source

are to support his or her medical opinion(s) or prior administrative

medical finding(s), the more persuasive the medical opinions or prior

administrative medical finding(s) will be.").

[54] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v.

Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to

identify the evidence supporting the found conflict to permit the court

to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d

565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and

logical bridge from the evidence to her conclusions so that we may

afford the claimant meaningful review of the SSA's ultimate

findings.").

this consistency is a reason to find them persuasive, the ALJ does not consider that both medical professionals were concerned about the impact that Plaintiff's cardiac and kidney impairments have on his ability to sustain work, when considered along with his anxiety and depression. The ALJ failed to meaningfully discuss whether Plaintiff's fatigue resulting from his cardiac and kidney impairments impede his ability to persist, along with his anxiety, which as Dr. Kraft opined, intermittently disrupts his ability to perform simple tasks.

Third, even though the ALJ's analysis indicates that she accepted Dr. Kraft's social-interaction opinions—that Plaintiff should have superficial social interactions with *others* in the workplace and was moderately impaired as to the ability to interact appropriately with the *general public*—the only limitation that the ALJ added to the RFC was restricting Plaintiff to superficial interaction with *coworkers*.[55] The ALJ failed to explain why the RFC did not also limit Plaintiff's

---

[55] AR 36, 39, 87.

1    interactions with the public.[56] This error is consequential because one

2    of the identified occupations by the vocational expert—storage rental

3    clerk—requires the worker to interact with customers to perform many

4    of the tasks.[57]

5        4.   <u>Dr. Cowan</u>

6        Although Plaintiff's briefing focused on the ALJ's evaluation of

7    Dr. Johnson's and Dr. Kraft's opinions, it is necessary to also discuss

8    Dr. Cowan's opinion and the ALJ's evaluation of such to appreciate the

9    ALJ's error in not fully evaluating the interplay between Plaintiff's

10

---

11    [56] It is error for an ALJ to simultaneously claim to incorporate a

12    medical opinion and yet, without explanation, omit relevant limitations

13    set forth in that medical opinion. *See* Soc. Sec. Rlg. 96-8p, 1996 WL

14    374184 at *7 (Jul. 2, 1996); *See also Rounds v. Comm'r Soc. Sec.*

15    *Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible

16    for translating and incorporating clinical findings into a succinct

17    RFC.").

18    [57] https://occupationalinfo.org/29/295367026.html (DOT 295.367-026:

19    storage rental clerk).

physical impairments, mental impairments, and medication side-effects when assessing whether Plaintiff can sustain fulltime work.

Dr. Cowan reviewed the medical evidence related to Plaintiff's physical impairments on December 19, 2022, after Dr. Kraft's review.[58] Dr. Cowan wrote "overall, fatigue seems to be the primary limiting symptom. This along with chronic kidney disease-III and chronic heart failure supports reducing the initial review's light RFC to sedentary with occasional stairs and ladders."[59] Dr. Cowan also wrote, "Claimant's current sedentary RFC at reconsideration recognizes both his improved organ function as well as his current remaining limitation which include easy fatigability and decreased exercise tolerance, largely resulting from chronic kidney disease."[60] Even though Dr. Cowan limited Plaintiff to a sedentary RFC and wrote "sed" as to

---

[58] AR 86–88.

[59] AR 81.

[60] AR 85 (cleaned up).

the "Subject" for the Physical RFC,[61] the listed lifting/carrying weights of 20 pounds occasionally and 10 pounds frequently are lifting/carrying weights for light work, not sedentary work. The ALJ utilized these light-work amounts when crafting the RFC, rather than using the sedentary-work amounts of 10 pounds occasionally and small/light objects frequently.

This discrepancy was not explained by either Dr. Cowan or the ALJ. Each of the three identified occupations are light work that allow for up to six hours of sitting; however, the vocational expert did not discuss whether Plaintiff could perform such jobs if the lifting/carrying requirements were reduced to sedentary lifting/carrying requirements. What amounts for lifting/carrying Plaintiff is capable of must be

_____

[61] AR 84–85; *see also* AR 87 ("Based on the seven strength factors of the physical RFC (lifting/carrying, standing, walking, sitting, pushing, and pulling, the individual demonstrates the maximum sustained work capability of the following: Sedentary."). Soc. Sec. Rlg. 83-10: Titles II and XVI: Determining Capability to do Other Work – the Medical-Vocational Rules of Appendix 2.

answered on remand. Notably, Plaintiff's treating provider Dr. Chu

wrote in October 2021 that future work limitations will depend on

serial evaluations and titration of medications over time.[62] Similarly,

during that same period, the discharge paperwork allowed "gentle

activity as tolerated."[63]

Furthermore, any improvement in Plaintiff's chronic heart

condition and chronic kidney condition since the alleged onset date

must be fairly considered—in that it was slight improvement.[64] For

instance, although Plaintiff was observed with less edema after June

2022, the lab results continued to show that his kidneys were not

functioning well:

- March 7, 2022: GFR of 25 (severe loss of kidney function).[65]

-------------------

[62] AR 1380.

[63] AR 1148.

[64] Soc. Sec. Rlg. 18-3p (requiring the prescribed treatment to be

expected to restore the individual's ability to engage in substantial

gainful activity).

[65] AR 1585.

DISPOSITIVE ORDER - 23

1    - April 25, 2022: GFR of 26 (severe loss of kidney function).[66]

2    - July 15, 2022: GFR of 28 (severe loss of kidney function).[67]

3    - July 21, 2022: GFR of 24 (severe loss of kidney function).[68]

4    - November 11, 2022: GFR of 30 (moderate to severe loss of

5      kidney function).[69]

6    - November 28, 2022: GFR of 31 (moderate to severe loss of

7      kidney function).[70]

8  Thus, Plaintiff's kidney function was still significantly impaired.

9  Although Plaintiff's ejection fraction improved from 35–40% to 46% per

10 the March 2022 echocardiogram, such is still below average, and as a

11 result, Plaintiff was referred for cardiac rehabilitation for chronic

12 systolic heart failure and prescribed several medications for his heart

13 condition, including hydralazine, Furosemide, and Carvedilol, which

---

15 [66] AR 1603.

16 [67] AR 1601.

17 [68] AR 1595.

18 [69] AR 1591.

19 [70] AR 1588.

are known to cause dizziness and/or fatigue.[71] Moreover, Plaintiff's treating provider discussed in November 2022 that Plaintiff needed to preserve his kidney function and reduce cardiovascular risk.[72]

Accordingly, on this record, the ALJ failed to fairly and fully evaluate the interplay between Plaintiff's physical impairments—impairments which are significant and for which he experienced only some improvement—and his ability to sustain work when considering these physical impairments, the medications he takes, and his anxiety and depression.

5.    Summary

Overall, the ALJ's evaluation of the medical opinions is not supported by substantial evidence.

**B.    Other Steps: The ALJ must reevaluate on remand.**

Because the ALJ's errors when weighing the medical opinions impacted her sequential analysis, the Court does not analyze Plaintiff's remaining claims. However, it is necessary to mention that one of the

---

[71] AR 1530.

[72] AR 1529–30.

identified occupations—outside deliverer—required Plaintiff to drive.[73]

Yet, Plaintiff testified that although he has a driver's license, he does

not drive due to nausea, fatigue, and dizziness and instead either gets

a ride from his mother or takes the bus. Several of the treatment notes

reflect that Plaintiff's mother was present with him.[74] If on remand an

occupation is identified that requires driving, the ALJ must evaluate

whether Plaintiff can perform that requirement of the occupation.[75] In

addition, on remand, the ALJ must evaluate Plaintiff's reported need to

use the bathroom every 30 minutes due to a medication side effect and

_____

[73] https://occupationalinfo.org/29/295367026.html (DOT 230.663-010).

The occupation of outside deliverer requires the worker to deliver items

to business establishments and private homes by foot, bicycle,

motorcycle, automobile, or public conveyance.

[74] *See* AR 312, 1143–45, 1155, 1297, 1301, 1525, 1554.

[75] *See* AR 248, 58; AR 67–68 (The vocational expert testified that

Plaintiff would not be able to work as an outside deliverer if he was

unable to drive.).

whether Plaintiff's bathroom usage is inconsistent with being able to perform fulltime work.[76]

Finally, this record does not contain a physical consultative examination. In addition to obtaining more recent medical records, the Social Security Administration is to give Plaintiff an opportunity to attend a physical consultative examination.[77] This examiner is to be

---

[76] *See* SSR 16-3p (allowing the medical source to consider medication side-effects and requiring the ALJ to consider medication side-effects when assessing the claimant's symptom reports); AR 68 (The vocational expert testified Plaintiff would be unlikely to retain a job if Plaintiff spent so much time in the bathroom that he was getting 80 percent or less of the work done.).

[77] 20 C.F.R. § 416.917:

> If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests. We will pay for these examinations. However, we will not pay for any medical examination arranged by you or your representative without our advance approval. If we arrange for the examination or test, we will give you reasonable notice of the date, time, and place the examination or test will be given, and the name of the person or facility who will

given sufficient longitudinal evidence concerning Plaintiff's heart and kidney conditions.[78]

## IV.   Conclusion

Because of the ALJ's consequential errors, Plaintiff's request for a remand for further proceedings is granted.[79] The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1.   The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

---

do it. We will also give the examiner any necessary background information about your condition.

[78] The record must clearly identify what medical records the examiner reviewed.

[79] *See Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2018); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

1      2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF**

2  **Nos. 8 and 9**, enter **JUDGMENT** in favor of **Plaintiff**, and

3  **CLOSE** the case.

4      IT IS SO ORDERED. The Clerk's Office is directed to file this

5  order and provide copies to all counsel.

6      DATED this 14th day of October 2025.

7

8                      EDWARD F. SHEA
                 Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19